# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

**NIGHT BOX**
**FILED**

SEP 2 9 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

SKG CORP., d/b/a WE BUY PAWNBROKERS
A Florida Corporation

                Plaintiff

**CASE NO. 00-06012-CIV-MIDDLEBROOKS**

**MAGISTRATE BANDSTRA**

vs.

KEN JENNE,
SHERIFF OF BROWARD COUNTY

                Defendant
_____/

QUIK CASH PAWN & JEWELRY, INC.
A Florida Corporation

                Plaintiff

**CASE NO. 99-7630-CIV-MIDDLEBROOKS**

**MAGISTRATE BANDSTRA**

vs.

KEN JENNE,
SHERIFF OF BROWARD COUNTY
                Defendant
_____/

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

    COME NOW the Plaintiffs, SKG CORP., d/b/a WE BUY PAWNBROKERS, and

QUIK CASH PAWN & JEWELRY, INC., and submit their motion for summary

judgment and in support thereof, submit the following:

NON-COMPLIANCE OF S.D. fla. L.R. ____



# I.
# INTRODUCTION

1.  Plaintiffs have each filed a three count action against the Defendant under 42 U.S.C. 1983, *et. seq.*[1]  Count 1 seeks a declaratory relief and asks this Court to declare the actions of the Defendant a violation of the Plaintiff's constitutional rights.  Counts II and III allege that the Defendant deprived the Plaintiff of it constitutional rights while acting under color of state law.  Count II seeks redress under 42 U.S.C. 1983 for Defendant's alleged taking of property; Count III seeks the same statutory relief for the Defendant's unconstitutional search of their businesses.

# II.
# UNDISPUTED ISSUES OF FACT

2.  The Plaintiff, SKG CORP., d/b/a WE BUY PAWNBROKERS (hereinafter WE BUY), operates a pawnshop at 3481 N.W. 19th Street, Lauderdale Lakes, Florida.  The pawnshop is licensed by the State of Florida.

3.  The Plaintiff, QUIK CASH JEWELRY & PAWN, INC. (hereinafter QUIK CASH) operates a pawnshop at 2714 Sunrise Blvd, Fort Lauderdale, Florida.

4.  The regulation of pawnshops is governed by Section 539.001, Florida Statutes.

## A. WE BUY PAWNBROKERS

5.  November 5.  On 30, 1999, two police officers employed by the Defendant, Sheiriff Ken Jenne, the elected Sheriff of Broward County, Florida, Sergeant Ed Sileo and Deputy Joel Steinberg, entered WE BUY to conduct an inspection of the pawnshop pursuant to Section 539.001.

---

[1] The Plaintiffs filed separate actions.  The two cases were consolidated by order of this court dated June 14, 2000.

6. Inside of the pawnshop were various pieces of property that were owned by WE BUY. These items are listed as Exhibit 1 to the affidavit of Bernard Goldstein, the proprietor in charge of WE BUY. Each of these items was property that had been placed for sale to the general public. There is no evidence that these items were the subject of a pending pawn transaction or the subject of a purchase that was less than thirty days old. In fact, each of these items was either:

    a. an expired pawn pursuant to Section 539.001(10); or
    b. a purchase that was more than thirty days old pursuant to Section 539.001(9)(c); or
    c. personal property that belonged to Mr. Goldstein or his son.

7. The two police officers asked Mr. Goldstein to produce documentation for the items listed in Exhibit A. Mr. Goldstein was not able to produce documentation for many of the items for which the police officers requested. Mr. Goldstein keeps all of his pending pawns and purchases locked in a safe. Mr. Goldstein opened his safe and allowed the police officers to examine the property and transaction forms that were inside.

8. The police officers immediately seized all of the items listed in Exhibit A. The police officers never told Mr. Goldstein that he had twenty four hours to provide them with the documentation that they were requesting.

9. At the times of the seizure of the items, the police officers:

    a. had no probable cause to believe that any of the property was misappropriated; and
    c. had no reason to believe that WE BUY did not own all of the items seized; and
    d. had no reason to believe that any of the property seized was the subject of a pending pawn or purchase.

10. All property that is the subject of a pending pawn is kept in a separate area in WE BUY and is not placed with the merchandise that is for sale to the public. All property that is purchased from the public is kept in a separate area for thirty days at which time it is placed for sale to the general public.[2]

11. None of the property that was seized by the police was the subject of a pending pawn or had been purchased within the previous thirty days.

12. Defendant has access to computer records of every pending pawn of the Plaintiff's place of business and every pawn and purchase that he has conducted since he opened the business because they are downloaded via computer at the same time that they are conducted. If the Defendant or any law enforcement agency in the State of Florida wanted to ascertain all of the existing pawns and purchases in a pawnshops during any thirty day period, they can check their own records that by law they must maintain.[3]

---

[2] Defendant has admitted this point in the deposition of Detective Sileo

> Q. You would agree with me, would you not, that pawnshops, as a general rule, do not keep or cannot keep their pawns in public view?
>
> A. I don't know of any provision that prohibits that, but I don't think I have ever seen it. I take that back. I mean, I have seen large, bulky items that may not fit in their normal back storeroom that they usually have separate from the sale area and things like that, where they would keep it out on the floor because they can't get it through the door or something, and it says not for sale and hold until such date. I mean I have seen that before, but as a general rule, they are kept separate.

Deposition of Detective Sileo. Page 30.

[3] The Defendant admitted this point in the deposition of Detective Steinberg when he was questioned about the search of WE BUY.

> Q. Now, these electronic records BSO would have had copies of themselves, because he would a have downloaded them into your computer?
>
> A. Not directly, but yes.
>
> Q. The information that you asked him for, you would have had back at the police station?
>
> A. Yes.
>
> Q. If you wanted to review all the pawns he had done for the last year you could have done so, correct?
>
> A. Yes.

Deposition of Detective Steinberg. Pages 34-35,

## B.  QUIK CASH PAWN & JEWELRY

13.  On December 2, 1999, police officers employed by the Defendant entered QUIK CASH'S place of business to conduct an administrative inspection pursuant to Section 539.001, Florida Statutes.  The officers engaged in the same conduct that is outlined in paragraphs five through twelve above.  They seized property owned by QUIK CASH as outlined in Exhibit A to the affidavit of Arthur Fogel (Exhibit B).

14.  QUIK CASH maintained the same procedures as WE BUY in segregating its active pawns and purchased items that were less than thirty days old.

## III.
## MEMORANDUM OF LAW

## A.  SECTION 539.001 FLORIDA STATUTES

15.  The above undisputed facts do not constitute a violation of any law in the State of Florida.  The Defendant lacked any legal justification to conduct a search and seizure of the Plaintiffs' property

16.  Section 539 prescribes under what circumstances law enforcement officers can search and seize property that is inside of a pawnshop.  According to the depositions of Detective Sileo (Exhibit C) and Detective Steinberg (Exhibit D), the reason the items were seized from the pawnshops was because the Plaintiffs violated Section 539.001(8)(a).  It provides, in relevant part, as follows:

> (a) At the time the pawnbroker enters into any pawn or purchase transaction, the pawnbroker shall complete a pawnbroker transaction form for such transaction, including an indication of whether the transaction is a pawn or a purchase, and the pledgor or seller shall sign such completed form.  The agency must approve the design and format of the pawnbroker transaction form, which must be 8 1/2 inches x 11 inches in size and elicit the information required under this section.  In completing the pawnbroker

transaction form, the pawnbroker shall record the following information, which must be typed or written indelibly and legibly in English.

17. Based on the language of this statute and the depositions in this case, the gravamen of the justification for searching the Plaintiffs' place of business and seizing their property is that the Plaintiffs' did not complete a pawnbroker transaction form for each item seized by the police.[4]

18. The undisputed facts do not and cannot establish a violation of any law. A pawnbroker is not required to maintain records on every item in his or her pawnshop. Section 539 is very specific about the record keeping duties of a pawnshop. When a pawn or purchase is conducted, a pawnshop must complete a pawnbroker transaction form pursuant to the dictates of Section 539.001(8)(a).

19. Once the pawn is completed, Section 539.001(9)(c) sets forth the record keeping duties of a pawnshop and the time period in which law enforcement officers may search records and property:

> All goods delivered to a pawnbroker in a pawn or purchase transaction must be securely stored and maintained in an unaltered condition within the jurisdiction of the appropriate law enforcement official for a period of 30 calendar days after the transaction. Those goods delivered to a pawnbroker in a purchase transaction may not be sold or otherwise disposed of before the expiration of such period. The pawnbroker shall make all pledged and purchased goods and all records relating to such goods available for inspection by the appropriate law enforcement official during normal business hours throughout such period. The pawnbroker must store and maintain pledged goods for the period prescribed in subsection (10) unless the pledged goods are redeemed earlier; provided, however, that within the first 30 days after the original pawn, the pledged goods may be redeemed only by the pledgor or the pledgor's attorney in fact.

---

[4] The fact that it is impossible as a matter of law for the Plaintiffs to have violated this section is discussed more fully at paragraph 31, *infra.*

Once the thirty day period expires and if the property has not been redeemed by the pledgor, title to the property passes to the pawnshop by operation of law.[5]

> Pledged goods not redeemed.--Pledged goods not redeemed by the pledgor on or before the maturity date of a pawn must be held by the pawnbroker for at least 30 days following such date or until the next business day, if the 30th day is not a business day. Pledged goods not redeemed within the 30-day period following the maturity date of a pawn are automatically forfeited to the pawnbroker; *absolute right, title, and interest in and to the goods shall vest in and shall be deemed conveyed to the pawnbroker by operation of law; and no further notice is necessary.* A pledgor has no obligation to redeem pledged goods or make any payment on a pawn.

Section 539.0001(10). (emphasis supplied).

20.　The only provision of Section 539.001 that permits law enforcement to seize property that is inside of a pawnshop is when they have reason to believe it has been misappropriated. Section 539.001(16)(a) and (b)[6] sets forth the procedure that law enforcement must follow if they have probable cause to believe that property inside of a pawnshop is misappropriated:

> (a) When an appropriate law enforcement official has probable cause to believe that property in the possession of a pawnbroker is misappropriated, the official may place a written hold order on the property. The written hold order shall

---

[5] The Defendant erroneously maintains that despite the express language of this statute, it does not limit the duty of a pawnshop to permit law enforcement officers to inspect property.

> Q. Would you agree with me that this provision requires, requires, a pawnshop owner to allow his goods to be inspected, and the records, only for 30 days after the transaction?
> A. No.
> Q. Your interpretation of this section is that the pawnbroker is required to make all pledged and purchased goods and all records relating to such goods available for inspection at any time?
> A. Yes.

Deposition of Detective Steinberg, Page 30.

[6] The Defendant has an interpretation of this provision that would render the statute meaningless:

> Q. Is it your understanding of Section 539 that if you find misappropriated property in a pawnshop that you can seize that property and take it in for use in a criminal investigation without issuing a hold order?
> A. You are saying I have to have a hold order first; is that correct?
> Q. I'm asking you if it's your interpretation that you have to.
> A.. I don't think so.
> Q. You think you can take the property without a hold order?
> A. Yes.

Deposition of Detective Steinberg, Page 18.

impose a holding period not to exceed 90 days unless extended by court order. The appropriate law enforcement official may rescind, in writing, any hold order. An appropriate law enforcement official may place only one hold order on property.

(b) Upon the expiration of the holding period, the pawnbroker shall notify, in writing, the appropriate law enforcement official by certified mail, return receipt requested, that the holding period has expired. If, on the 10th day after the written notice has been received by the appropriate law enforcement official, the pawnbroker has not received from a court an extension of the hold order on the property and the property is not the subject of a proceeding under subsection (15), title to the property shall vest in and be deemed conveyed by operation of law to the pawnbroker, free of any liability for claims but subject to any restrictions contained in the pawn transaction contract and subject to the provisions of this section.

21. The Defendant in this case did not follow the law. They searched items in a pawnshop that they had no right to search and seized property that they had no right to seize. The Defendant's action rests on the erroneous legal theory that a pawnshop must maintain pawnbroker transaction forms on the premises for every piece of property in its possession regardless of when the pawn or purchase underlying that piece of property was conducted. This theory is flatly contradicted by the express provisions of Section 539.001. There is no law in the State of Florida that requires a pawnbroker to maintain pawnbroker transaction forms related to property in its possession once title to that property has passed to him. The only legal duty that a pawnshop owner has to produce transaction forms to a law enforcement officer is under Section 539.001(9)(b), which provides that "[t]he appropriate law enforcement official may, for the purposes of a criminal investigation, request that the pawnbroker produce an original of a transaction form that has been electronically transferred. The pawnbroker shall deliver this form to the appropriate law enforcement official within 24 hours of the request."[7] No such

---

[7] Section 539.001(9) categorizes pawnshops by whether or not they download their transaction forms and then send them via computer to the police or whether they deliver copies to the police. Section 539.001(a)

request was made in this case. The police inquired of both Plaintiffs if they had documentation for every item in its store. When each Plaintiff stated he could not produce such documentation, the police seized the items on the theory that the Plaintiffs had violated Section 539.001(8)(a) because they did not have a pawn transaction form for each item.[8]

22. According to Florida law, the Defendant had no right to even search the property in either Plaintiffs' pawnshop or the transaction forms if they even existed. Section 539.001(9)(c) further circumscribes the right of law enforcement to conduct searches of property and transaction forms inside of a pawnshop. It provides that a pawnshop owner is required only to permit law enforcement to search property and transaction forms that are less than thirty days old from the date that the transaction form

---

requires pawnshops that send their forms to the police to maintain the forms on the premises for one year after the pawn or purchase has been completed. Since both Plaintiffs use a computer, they come within the ambit of Section 539.001(b) as outlined above.

[8] The Defendant, through its witnesses, attempts to make an end run around this statutory requirement by denying that they have to comply with its provisions.

> Q. Okay. Is it your opinion that when you go into a pawnshop and you ask a pawnshop owner to provide you with documentation for every piece of property in his pawnshop, and if he refuses to do so at that point and he just says I don't have them, is it your position that you can arrest him at that point and seize the property as evidence?
> A. Yes.
> Q. You are absolutely certain of that?
> A. You asked my opinion, yes.

Detective Steinberg's deposition. Page 30. Not to be outdone in his misinterpretation of the law, Detective Sileo believes that he has a right to seize property before there is any reason whatsoever to believe that a pawnbroker has violated the law.

> Q. If We Buy Pawnbrokers was transferring its data electronically, by law they have 24 hours in which to produce pawnbroker transaction forms that you wish to inspect, correct?
> A. Yes.
> Q. Is it your position that, nevertheless, when you do an inspection, if the transaction forms are not given to you immediately, you have a right to then seize all the property that is - - that relates to these pawnbroker transaction forms that were not produced?
> A. Yes. I'm not going to wait 24 hours to collect evidence, yes.

Detective Sileo's deposition, page 76.

The Defendant has admitted that it will "shoot first and ask questions later." The Defendant's explanation is intriguing. It boils down to the following: you may be innocent and you haven't violated any laws, but just to be on the safe side, we are going to seize your property anyway until you have proven your innocence to us. Such reasoning has no place in a free society.

has expired. The property that was seized by the police in this case was outside of the purview of this statute. The Defendant cannot prove that any of this property was less than thirty days old from the date of the pawn or transaction

23. In order to justify a search of the property, the Defendant must show to this Court that the property it searched was the subject of a pawn or transaction that was less than thirty days old. There is no such evidence. Each piece of property taken was not an active pawn or a purchase that was less than thirty days old. Both Plaintiffs stored all of their active pawns and purchases that were less than thirty days old in a separate area of the pawnshops outside of the view of the public as required by law. Further, law enforcement officers knew or should have known this easily ascertainable fact at the time they entered the Plaintiffs' pawnshops on each respective date. Each Plaintiffs' active pawns and purchases had been downloaded and sent to the Defendant's computer data base. Information concerning every pawn that each Plaintiff conducted was available to the Defendant.

## B. THE CIVIL RIGHTS VIOLATIONS

24. The statute in question, 42 U.S.C. 1983, reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

42 U.S.C. 1983.

25. Count I of both complaints is a declaratory action seeking to have the actions of the Defendant declared a violation of each respective Plaintiff's constitutional rights. Count II alleges that the Defendant, acting under color of state law, deprived the Plaintiffs of their property without due process of law.

## i. THE TAKING OF PROPERTY

26. Plaintiffs claim that the Defendant illegally confiscated their property. What rights the police have in property they seize *vis a vis* the person from whom they are taking it is governed by state law. "The standard for defining property is whether a person has a legitimate claim of entitlement to it. *Board of Regents of State College v. Roth*, 408 U.S. 564 (1972). In applying this test, the Court also noted, 'Property rights, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Florida Secondhand Dealers Association, Inc., a Florida Corporation, and Happy Hocker Pawnshop, Inc., a Florida Corporation v. City of Fort Lauderdale,* 699 F.Supp. 888 (S.D. Fla. 1988) (hereinafter *Happy Hocker)* (Opinion holding that Florida pawnshops have a property interest in stolen property they possess that government cannot abridge without providing them due process of law). "The pawnbroker, as pledgee, has a legitimate possessory interest in the property as against the rest of the world except the person having title to the property. *G & G Jewelry v. City of Oakland*, 984 F.2d 1093 (9th Cir. 1993). *See Also: Wofenbarger v. Williams*, 774 F.2d 358 (10th Cir. 1985) (pawnshop operator has a constitutionally protected property interest

in allegedly stolen items that the police seized that cannot be abridged without compliance with constitutional requirements).[9]

27. Pursuant to Florida law, the property that was seized by the Defendant belonged to the Plaintiff. Section 539.001(10), *supra.*, places absolute title to this property with the Plaintiffs. Their legal status, at the time of the seizure, was no different from that of any other citizen who possesses his or her own property and has a legitimate expectation that the government will not seize it without due process of law.[10] The Plaintiffs are alleging that the property (as delineated in the affidavits of Arthur Fogel and Bernie Goldstein) belonged to them and was illegally confiscated by the Defendant. On this issue, there is no material issue of fact and the Plaintiffs are entitled to judgment as a matter of law.

## ii. THE SEARCH

28. Plaintiffs do not contest the fact that law enforcement authorities may conduct searches of pawnshops pursuant to Section 539.001 nor do they contest the constitutionalality of this statute.[11] However, a statutory authorization for an

---

[9] Each of the cited cases involved situations wherein the property illegally confiscated was allegedly stolen. There was never an unequivocal claim by the pawnshop that it owned the property outright. As the *Wolfenbarger* court noted, "Wolfenbarger does not claim that her right to own the property was violated but rather, that her right to due process was violated." *Id.* at 362. The Plaintiffs in this case have established a constitutional violation that is even more egregious than that which was present in *Happy Hocler, G & G, and Wolfenbarger*. There is no factual dispute in this case that the property is stolen or that is does not belong to the Plaintiffs

[10] The Defendant, in its motion to dismiss, and through its witnesses at the depositions, makes much of the fact that the pawnbrokering business is "closely regulated." Such an assertion, while true, is a non-starter. Plaintiffs are not alleging that their businesses are not regulated closely by the State of Florida. They are arguing the opposite. The business is closely regulated by Section 539.001, Florida Statutes, which prescribes when and how a pawnbroker obtains legal title to property in its possession. Plaintiffs are only urging that this Court recognize this obvious fact and hold that the Defendants, as a matter of law, have not adhered to the dictates of the very statute that regulates pawnshops and by not so adhering, have violated the Plaintiffs' constitutional rights.

[11] Though not entirely relevant for these purposes, the interaction between Section 539.001 and traditional search warrant requirements raises some very interesting issues. For example, are the police always constrained by the statutory strictures of Section 539.001. If the police discover a murder weapon inside

administrative search does not give the police *carte blanche* to exceed the parameters of that statutory mandate. *Swint v. City of Wadley*, 51 F.3d 988 (11th Cir. 1995). As stated in the affidavit of the Plaintiffs, this search went far beyond the permissible bounds of Section 539.001. Section 539.001(9)(c) specifically limits the permissible scope of a warrantless administrative search. Law enforcement authorities may only search property and transaction forms that are less than thirty days old from the date that the transaction form has expired. The Defendant in this case went on a fishing expedition and put the proverbial cart before the horse. They assumed, wrongly, that they could indiscriminately search any property inside of a pawnshop and then after conducting this search, seize any property for which there was not an immediate and identifiable pawnbroker transaction form. Never did the Defendant attempt to obtain a search warrant for this search. As held by the *Swint, supra.*:

> Defendants argue there was no violation of plaintiffs' rights, because the two raids were administrative searches of the Club to which the Club owners had previously consented. Even in the context of administrative searches of business property, however, the Fourth Amendment limits warrantless searches: "[P]rior cases have established that the Fourth Amendment's prohibition against unreasonable searches applies to administrative inspections of private commercial property." *Donovan v. Dewey*, 452 U.S. 594, 598, 101 S.Ct. 2534, 2537-38, 69 L.Ed.2d 262 (1981). While "legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment," *id.* at 598, 101 S.Ct. at 2538, pretextual administrative searches do:
> [T]he Fourth Amendment protects the interest of the owner of property in being free from unreasonable intrusions onto his property by agents of the

---

of a pawnshop, do they have to comply with Section 539.001 or can they obtain a search warrant to gather the evidence that they need. Common sense would seem to suggest that obtaining a court authorized search warrant would obviate the need to comply with the statute. However, the Defendant in this case has never made the argument that it was enforcing a violation of law independent from Section 539.001. Further, if it was doing so, it would have had to obtain a search warrant before seizing the Plaintiff's property. The depositions of Detectives Sileo and Steinberg make abundantly clear that their entire purpose in conducting these searches and seizures was *pursuant to and not independent of* Section 539.001. Further, there has never been any evidence that the Plaintiffs were in any way in violation of Section 539.001 to begin with. This issue is more fully discussed in paragraph 29, *infra*.

government.  Inspections of commercial property may be unreasonable if they are not authorized by law or are unnecessary for the furtherance of federal interests.  Similarly, warrantless inspections of commercial property may be constitutionally objectionable if their occurrence is so random, infrequent, or unpredictable that the owner, for all practical purposes, has no real expectation that his property will from time to time be inspected by government officials.

*Id.* at 599, 101 S.Ct. at 2538 (citations omitted) (emphasis in original).  Thus, where an act authorizing administrative inspections "fails to tailor the scope and frequency of such administrative inspections to the particular" governmental concern, and "does not provide any standards to guide inspectors either in their selection of establishments to be searched or in the exercise of their authority to search," a search warrant will be required. *Id.* at 601, 101 S.Ct. at 2539 (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (holding that absent consent a warrant was constitutionally required in order to conduct administrative inspections under Sec. 8(a) of OSHA)).

*Id.*

29.  Since the Defendant did not comply with Section 539.001, the only other manner in which this search can be justified is if the Defendant either obtained a search warrant or can claim that its search was justified pursuant to an exception to the Fourth Amendment's requirement that a warrant be obtained.  "A warrantless search is presumptively unreasonable." *United States v. McGregor*, 31 F.3d 1067, 1068 (11th Cir. 1994) *See United States v. Edmondson*, 791 F.2d 1512, 1514 (11th Cir.1986). Defendants may assert that the search and seizure in this case falls within the "administrative search exception" to the Fourth Amendment.  *Peterman v. Coleman*, 764 F.2d 1416 (11th Cir. 1985).  However, as discussed in footnote 5, *infra.*, the Plaintiffs are not alleging that the Section 539.001 violates the Fourth Amendment; they are alleging that the Defendant's failure to abide by the strictures of Section 539.001 resulted in a violation of the Plaintiffs' Fourth Amendment rights.  It is not enough to simply say that the Defendant's conduct falls within the administrative exception to the Fourth

Amendment. By that reasoning, any administrative search, regardless of its parameters would be justified by the fact that the entity being searched was a regulated business. The facts of *Peterman, supra.,* and its consequent holding, are directly on point. In 1984, Pinellas County enacted an ordinance that, *inter alia,* required second hand dealers[12] to maintain a register of their transactions in second-hand goods. The register had to contain an accurate description of persons from whom articles are bought, as well as an accurate description of the property acquired. The register was required to be made on forms provided by Pinellas County law enforcement authorities, and "this documentation shall be made available for inspection by any law enforcement officer employed in Pinellas County." The Appellants (Plaintiffs below) argued that this ordinance violated their Fourth Amendment rights in that it permitted searches of their property in contravention of that amendment. The Court, after reviewing *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); and *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), concluded that there was a pervasive history of close regulation of the second hand goods industry such that the administrative regulations in question were not violative of the Fourth Amendment. However, and crucial to the case at bar, Appellants raised with the Court the possibility that law enforcement officers would go outside the permissible bounds of the regulatory scheme. The Court opined as follows:

> Appellant argues vigorously that he anticipates more extensive searches than we have described. Pinellas County has stated its understanding to this court, however, that the ordinance does not require production of merchandise for inspection, but only pertains to the forms the ordinance requires to be maintained. Brief of Pinellas County at 8. Sheriff Coleman

---

[12] Prior to 1996, pawnshops and second hand dealers were treated equally under Florida law under Section 538.00 Florida Statutes. Section 539.001 was passed in 1996. It governs pawnshops. Second hand dealers are still governed by the former statute.

has stated his understanding that the statute does not permit entry into nonpublic portions of a second-hand dealer's premises, *and Sheriff Coleman has further represented that he too does not construe the statute to allow law enforcement officers to examine or take possession of a dealer's merchandise.* Brief of Gerry Coleman at 16-17. Because appellant has challenged only the facial validity of the ordinance in the present action, we have no occasion to consider the consequences of such more extensive searches. (FN3) We hold only that the ordinance as drafted does not violate appellant's Fourth Amendment rights.

*Id. at* 1421-1422. Defendant has in this case engaged in the very conduct with which the *Peterman* court was concerned. There is nothing in Section 539.001, other than the hold provisions, that permits law enforcement officers to seize property without a warrant from inside of a pawnshop. The Defendant in this case has blatantly and illegally exceeded the permissible scope of a search under the parameters of Section 539.001. Unlike the Appellant in *Peterman*, the Plaintiffs here are not challenging the facial invalidity of Section 539.001 but are challenging more extensive searches that have gone beyond what is permitted by law and cannot be constitutionally justified.[13]

30. The Defendant cannot justify its illegal conduct. The Plaintiffs never violated any law. A search warrant could not have been applied for because a showing of probable cause could never have been made. Both Detective Sileo and Steinberg admitted as much in their depositions. Detective Sileo testified as follows:

> Q. So, for all the property at Quik Cash at the time that you took it, did you have any evidence or any reason to believe that any of that property was stolen?
>
> A. No.
>
> Q. Did you have any reason to believe that any of that property was misappropriated?

---

[13] The Defendant not only searched and seized property that belonged to the pawnshops in question, they searched and seized the personal property of Mr. Goldstein. His personal laptop computer and coin collection was taken form inside of the pawnshop. There is no justification whatsoever for the seizure of these items.