CLOSED
CIVIL
CASES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



QUIK CASH PAWN & JEWELRY, INC.,
a Florida corporation,

   Plaintiff,

vs.            Case No. 99-7630-Civ-Middlebrooks

KEN JENNE,
SHERIFF OF BROWARD COUNTY,

   Defendant.
_____/

SKG CORP., d/b/a WE BUY PAWNBROKERS,
a Florida corporation,

   Plaintiff,

vs.            Case No. 00-6012-Civ-Middlebrooks

KEN JENNE,
SHERIFF OF BROWARD COUNTY,

   Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court on cross-motions for summary judgment filed by the Plaintiffs, Quik Cash Pawn & Jewelry, Inc. and SKG Corp., d/b/a We Buy Pawnbrokers ("We Buy") and Defendant Ken Jenne, the Sheriff of Broward County. The Court has considered the filings supporting and opposing the cross-motions and heard oral argument. For the reasons hereinafter stated, Defendant's motions are granted.

Rec'd in MIA Dkt 1/18

I.

Each Plaintiff filed suit against the Sheriff in his official capacity pursuant to 42 U.S.C. § 1983 seeking declaratory relief (Count I) and damages for the unlawful taking of property (Count II), and for unlawful search (Count III) arising from the search and seizure of property in the Plaintiffs' businesses. The two cases were consolidated by order of this Court dated April 20, 2000.

II.

Plaintiff SKG Corp., d/b/a We Buy Pawnbrokers ("We Buy"), a Florida corporation, operates a pawnshop at 3481 N.W. 19th Street, Lauderdale Lakes, Florida. Plaintiff Quik Cash Jewelry & Pawn, Inc., ("Quik Cash"), a Florida corporation, operates a pawnshop a 2714 West Sunrise Boulevard, Fort Lauderdale, Florida. Both pawnshops are licensed by the Division of Consumer Services of the Department of Agriculture and Consumers Services ("Agency") of the State of Florida. At all times material hereto, the Sheriff was acting under color of state law as defined under 42 U.S.C. § 1983 et seq.

III.

On November 30, 1999, Detectives Ed Sileo and Joel Steinberg entered the We Buy pawnshop at approximately 1:00 p.m., during normal business hours, to conduct a routine inspection pursuant to The Florida Pawnbroking Act, Fla. Stat. ch. 539 ("the Act"). (Sileo Dep. at 58:4-9.) Detectives Sileo and Steinberg entered the We Buy pawnshop and told Bernard Goldstein, the manager;[1] his son; and another employee that they were there to conduct an

---

[1] Mr. Goldstein's wife is the owner and president of the We Buy pawnshop. (Goldstein Aff. ¶ 1.)

inspection. (Id. at 61.) Detective Sileo began looking through the items in the back room to ensure that they were tagged with a number that corresponded to a transaction form. (Id. at 61:14-19.) Detective Sileo found nothing out of order in the back room. (Id. at 61:20-23.)

Detective Steinberg inspected the safe area. (Id. at 61:24-25.) Detective Sileo assisted Detective Steinberg with the inventory of property located in the safe that was not tagged or for which the We Buy pawnshop was unable to provide an explanation or documentation proving ownership. (Id. at 62:10-14.) Detectives Sileo and Steinberg asked Mr. Goldstein to provide transaction forms for the property that was not tagged. (Id. at 62-63.) Mr. Goldstein was able to provide transaction forms for some, but not all, of the property. (Id. at 62-63.) Detectives Sileo and Steinberg seized those items for which no form was produced and provided the We Buy pawnshop with a property receipt for those items. (Id. at 62-64; Ex. A.) Of the items that were seized, Mr. Goldstein claims that a Baretta 21 revolver, an IBM notebook computer, and a number of rare coins were his own personal property. (Goldstein Dep. at 27:10; 28:6.)

At oral argument, counsel for Defendant stated that when Detective Steinberg asked Mr. Goldstein what software was on the computer, he didn't know. When Detective Steinberg turned the computer on, the registered owner was not Mr. Goldstein, but another individual. As to the rare coins, counsel for Defendant stated that Mr. Goldstein claimed that the coins, several of which were a hundred years old, were till for the shop. Counsel for Defendant further stated that the gun in the safe was also seized because the serial number had been scratched off, which is a violation of the firearms statute. Counsel for Plaintiffs did not dispute defense counsel's assertions as to the computer and coins, but did contend that there is nothing in the record to indicate that the serial number had been scratched off the gun. As the record reflects, Mr.

3

Goldstein does not claim that those items were the property of the We Buy corporation, and he is not a party to this lawsuit. Regardless, no proof of ownership has been provided to the Sheriff.

On December 2, 1999, Detectives Sileo, Steinberg, and Fraley conducted an inspection at the Quik Cash pawnshop pursuant to The Florida Pawnbroking Act. When the detectives entered the store, they met Bruce Nelson, an employee of Quik Cash. (Sileo Dep. at 79:8-17.) During the inspection, the detectives were checking to make sure that the items either on display or being held in the back room had some type of corresponding pawn ticket number or merchant number that the pawnshop could assign to their inventory to keep track of it. (Id. at 79:19; 80:2.) Numerous items were found for which Mr. Nelson was not able to produce transaction forms or evidence showing that the pawnshop actually owned these items. (Id. at 80-81.) Those items for which Mr. Nelson was not able to produce a transaction form were seized by the detectives and Quik Cash was issued a property receipt for those items. (Id.; Ex. A.)

The property from Quik Cash was seized because Mr. Nelson was not able to provide the detectives with any documentation as to the origin of the property, not because the property was believed to have been stolen. (Id. at 85:17-25.) The items that were seized are being held in evidence for use in criminal proceedings by the State Attorney against the owners of Quik Cash.

The Sheriff has not transferred any of the items seized to any alleged victim of a crime or claimant asserting ownership over the property; the Sheriff has not exerted ownership or possessory interest over the property.

4

IV.

Summary judgment is authorized when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing whether there is any "genuine issue" for trial, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997), and resolve all reasonable doubts about the facts in favor of the non-movant." United of Omaha Life Ins. v. Sun Life Ins. Co. of America, 894 F.2d 1555, 1558 (11th Cir. 1990). Moreover, the court must avoid weighing conflicting evidence or making credibility determinations. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999), cert. denied, ___ U.S. ___, 120 S. Ct. 1962, 146 L.Ed.2d 793 (2000). Instead, "'[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Hairston v. Gainesville Sun. Pub. Co., 9 F.3d 913, 918 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

At oral argument, the parties agreed that there are no disputed facts, and that the claim for declaratory relief presents a pure question of law to be decided by the Court, not a jury. The last two claims seeking monetary damages present issues of fact that can be decided by a jury, or if waived, by the Court. The record reflects that Plaintiffs did not demand a trial by jury. Defendant demanded a trial by jury; however, Defendant has waived that demand and seeks a bench trial. (See Defendant's Unilateral Pretrial Statement at 1, 2.) A trial on damages is

obviated by the granting of Defendant's Motions for Summary Judgment.

V.

A.  The Florida Pawnbroking Act

Plaintiffs assert that the Sheriff exceeded his authority under the Act by seizing property for which the Plaintiffs were unable to produce transaction forms rather than placing a hold order on the property. Plaintiffs allege that if an officer believes property was misappropriated, the Act requires the officer to place a hold order on it pursuant to Florida Statute § 539.001(16). The Sheriff agrees that the Act provides for the placement of hold orders on property that is believed to have been misappropriated,[2] but the property was not seized because the detectives thought it was misappropriated. The property was seized for the Plaintiffs' failure to maintain transaction forms as required by Florida Statute § 539.001(8).

Plaintiffs also allege that a pawnshop owner is required only to permit law enforcement officers to search property and transaction forms that are less than thirty days old, and the We Buy pawnshop further alleges that it is not required to provide documentation for personal property on its premises. Defendant argues that Act provides a law enforcement officer authority to regulate the transfer of all property in and out of a pawnshop.

Florida Statute § 539.001 states in pertinent part:

> **(8) Pawnbroker transaction form.**
>
> (a) At the time the pawnbroker enters into any pawn or purchase transaction, the pawnbroker shall complete a pawnbroker transaction form for such transaction, including an indication of whether the

---

[2]"Misappropriated" means stolen, embezzled, converted, or otherwise wrongfully appropriated against the will of the rightful owner. Fla. Stat. § 539.001(f).

6

transaction is a pawn or a purchase, and the pledgor or seller shall sign such completed form.

**(9) Recordkeeping; reporting; hold period.**

(a) A pawnbroker must maintain a copy of each completed pawnbroker transaction form on the pawnshop premises for at least 1 year after the date of the transaction. On or before the end of each business day, the pawnbroker must deliver to the appropriate law enforcement official the original pawnbroker transaction forms for each of the transactions occurring during the previous business day, unless other arrangements have been agreed upon between the pawnbroker and the appropriate law enforcement official. If the original transaction form is lost or destroyed by the appropriate law enforcement official, a copy may be used by the pawnbroker as evidence in court. When an electronic image of a pledgor or seller identification is accepted for a transaction, the pawnbroker must maintain the electronic image in order to meet the same recordkeeping requirements as for the original transaction form. If a criminal investigation occurs, the pawnbroker shall, upon request, provide a clear and legible copy of the image to the appropriate law enforcement official.

(b) If the appropriate law enforcement agency supplies the appropriate software and the pawnbroker presently has the computer ability, pawn transactions shall be electronically transferred.

* * *

In the event the pawnbroker transfers pawn transactions electronically, the pawnbroker is not required to also deliver to the appropriate law enforcement official, the original or copies of the pawnbroker transaction forms. The appropriate law enforcement official may, for the purpose of a criminal investigation, request that the pawnbroker produce an original of a transaction form that has been electronically transferred. The pawnbroker shall deliver this form to the appropriate law enforcement official within 24 hours of the request.

(c) All goods delivered to a pawnbroker in a pawn or purchase transaction must be securely stored and maintained in an unaltered condition within the jurisdiction of the appropriate law enforcement official for a period of 30 calendar days after the transaction. Those goods delivered to a pawnbroker in a purchase transaction may not be sold or otherwise disposed of before the expiration of such period.

The pawnbroker shall make all pledged and purchased goods and all records relating to such goods available for inspection by the appropriate law enforcement official during normal business hours throughout such period. The pawnbroker must store and maintain pledged goods for the period prescribed in subsection (10) unless the pledged goods are redeemed earlier; provided, however, that within the first 30 days after the original pawn, the pledged goods may be redeemed only by the pledgor or the pledgor's attorney in fact.

**(10) Pledged goods not redeemed.** Pledged goods not redeemed by the pledgor on or before the maturity date of a pawn must be held by the pawnbroker for at least 30 days following such date or until the next business day, if the 30th day is not a business day. Pledged goods not redeemed within the 30-day period following the maturity date of a pawn are automatically forfeited to the pawnbroker; absolute right, title, and interest in and to the goods shall vest in and shall be deemed conveyed to the pawnbroker by operation of law; and no further notice is necessary. A pledgor has no obligation to redeem pledged goods or make any payment on a pawn.

**(12) Prohibited acts.** A pawnbroker, or an employee or agent of a pawnbroker, may not:

(b) Refuse to allow the agency, the appropriate law enforcement official, or the state attorney, or any of their designated representatives having jurisdiction, to inspect completed pawnbroker transaction forms or pledged or purchased goods during the ordinary hours of the pawnbroker's business or other time acceptable to both parties.

**(16)  Hold orders; issuance; required information; procedures.**

(a) When an appropriate law enforcement official has probable cause to believe that property in the possession of a pawnbroker is misappropriated, the official may place a written hold order on the property. The written hold order shall impose a holding period not to exceed 90 days unless extended by court order. The appropriate law enforcement official may rescind, in writing, any hold order. An appropriate law enforcement official may place only one hold order on property.

> **(17) Criminal penalties.**
>
> (b) In addition to any other penalty, any person, who willfully violates this section or who willfully makes a false entry in any record specifically required by this section, commits a misdemeanor of the first degree, punished as provided in s. 775.082 or s. 775.083.

§ 539.001, Fla. Stat. (West Supp. 2000).

The Sheriff conducted an inspection of the Plaintiffs' businesses and requested their employees to produce transaction forms for items that were not tagged. When Plaintiffs were unable to produce the forms or other documentation, it was reasonable to conclude that the Plaintiffs had violated subsection (8) which is a misdemeanor crime under subsection (17). The evidence of this crime consisted of the property that was not tagged and for which the Plaintiffs were unable to produce the forms. The Sheriff seized the property and placed it into custody as evidence of this crime.

The Act does not provide that the Sheriff must place a hold order on evidence of the crime of failure to maintain a transaction form. The Act states that the hold order may be placed on property that is believed to have been misappropriated; the Sheriff has not asserted that the property in question was believed to have been misappropriated.

The We Buy pawnshop also argues that some of the items seized belonged to Mr. Goldstein, who, as noted, is not a party to this action. We Buy asserts that it may maintain personal property of individuals on the premises without providing any proof of purchase, pawn, or other documentation proving its ownership. The Act does not specifically address the issue of property inside a pawnshop that is alleged to be personal, but it is clear that the Act, when read as

a whole, is designed to provide a law enforcement officer authority to closely regulate the transfer of all property in and out of a pawnshop.

B.    Due Process

Where the Government seizes property not to preserve evidence of criminal wrongdoing but to assert ownership and control over the property, its action must also comply with the Due Process Clause. See, e.g., Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S. Ct. 2080, 40 L. Ed. 2d 452 (1974); Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972); Florida Pawnbrokers and Secondhand Dealers Ass'n., Inc. v. City of Fort Lauderdale, 699 F. Supp. 888, 890 (S. D Fla. 1988). In this case, the Sheriff has not attempted to exert possessory or ownership control over the property seized from the Plaintiffs' pawnshops, and intends to return the property at the conclusion of the criminal proceedings. Since there is no evidence to support a finding that the Sheriff's purpose in seizing the property from the pawnshops was for any purpose other than to secure the evidence for the criminal proceedings, the Fourteenth Amendment's due process protections have not been invoked.

C.    Search and Seizure

Pawnshops are recognized as "closely regulated" industries. United States v. Biswell, 406 U.S. 311, 92 S. Ct. 1593, 32 L. Ed. 2d 87 (1972). Because the owner or operator of commercial premises in a closely regulated industry has a reduced expectation of privacy, the warrant and probable-cause requirements of the traditional Fourth Amendment standard of reasonableness for a government search have a lessened application in this context. New York v. Burger, 482 U.S. 691, 702, 107 S. Ct. 2636, 2643, 96 L. Ed. 2d 601 (citing O'Connor v.

10

Ortega, 480 U.S. 709, 741, 107 S. Ct. 1492, 1510, 94 L. Ed. 2d 714 (1987) (dissenting opinion)). "Where the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commerical premises may well be reasonable." Burger, 482 U.S. at 702, 107 S. Ct. at 2644.

Such a warrantless inspection will be deemed to be reasonable only if three criteria are met. First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be "necessary to further [the] regulatory scheme," and third, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." Burger, 482 U.S. at 703, 107 S. Ct. at 2644 (internal citations omitted.)

The Florida regulatory scheme satisfies the three criteria necessary to make reasonable warrantless inspections pursuant to § 539.001. First, it is undisputed that the State has a substantial interest in regulating the pawnshop industry because of the problem of theft associated with this industry. Second, it is undisputed that regulation of the pawnshop industry reasonably serves the State's substantial interest in reducing theft; the State may rationally believe that it will reduce theft by regulations that prevent pawnshops from becoming markets for stolen goods and regulations that help trace the origin of pawned goods. Third, Plaintiffs don't dispute that the Act provides a constitutionally adequate substitute for a warrant. The statute informs pawnbrokers that their businesses are subject to inspection during reasonable business hours by law enforcement officers for the purpose of determining whether the government's substantial interest in tracking pawned or sole property through transaction forms is met.

The purpose of maintaining pawnshops in the hands of legitimate business persons and of tracing property that passes through these businesses is served by having officers examine the property in a pawnshop even when the operator fails to produce transaction forms. Forbidding inspecting officers to examine any property that a pawnshop owner simply declares to be the personal property of its employees or property that belongs to the pawnshop would permit an illegitimate pawnshop owner to thwart the purposes of the statute.

The Sheriff's conduct does not violate the Fourth Amendment.

Accordingly, it is

ORDERED and ADJUDGED as follows:

1. The Defendant's Motion for Summary Judgment in **Case No. 99-7630-Civ-Middlebrooks (DE 32) is GRANTED**.

2. The Defendant's Motion for Summary Judgment in **Case No. 00-6012-Civ-Middlebrooks (DE 30) is GRANTED**.

3. The Plaintiffs' (Consolidated) Motion for Summary Judgment is **DENIED**. (See **DE 27** in **Case No. 99-7630**; **DE 25** in **Case No. 00-6012**).

4. Any and all other motions pending in Case No. 99-7630-Civ-Middlebrooks and Case No. 00-6012-Civ-Middlebrooks as of the date of this order are hereby **DENIED AS MOOT**.

5. If Defendant seeks costs, he shall file an appropriate motion with supporting legal memorandum within 15 days of the date of this order or shall be deemed to have waived said claims.

6. The Clerk of Court is directed to enter **Case No. 99-7630-Civ-Middlebrooks** **CLOSED**.

7. The Clerk of Court is directed to enter **Case No. 00-6012-Civ-Middlebrooks** **CLOSED**.

8. The Court will retain jurisdiction for the purpose of ruling on a timely filed and appropriate motion for costs.

DONE and ORDERED at Miami, Florida, this 16th day of January, 2001.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies provided to Counsel of Record.