# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

In Reply Give Number
Of Case And Names of Parties

CLARENCE MADDOX
U. S. DIST. CT.
U. OF FLA. - MIAMI

March 14, 2002

Clarence Maddox
Clerk, U.S. District Court
301 N. Miami Avenue
Miami FL 33128

RE: 01-10880-GG    SKG, Corp. v. Broward County Sheriff's Office
DC DKT NO.:  00-06012 CV-DMM

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued
as the mandate of this court.

Please acknowledge receipt on the enclosed copy of this letter.

A copy of this letter and the judgment form, but not a copy of the court's opinion or Rule 36-1
decision, is also being mailed to counsel and pro se parties. A copy of the court's opinion
or Rule 36-1 decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James Delaney (404) 335-6113

This Court consolidated this appeal with case number 01-10879.

Encl.

MDT-1 (1-2001)

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 25, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-10879

_____

D.C. Docket No. 99-07630-CV-DMM

QUIK CASH PAWN & JEWELRY, INC., a Florida corporation,
SKG CORP., a Florida corporation, d.b.a. We Buy Pawnbrokers,

Plaintiffs-Appellants,

versus

SHERIFF OF BROWARD COUNTY, Ken Jenne,

Defendant-Appellee.

_____

No. 01-10880

_____

D.C. Docket No. 00-06012-CV-DMM

A True Copy / Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

SKG CORP., a Florida Corporation, d.b.a. We Buy Pawnbrokers,
QUIK CASH PAWN & JEWELRY, INC., a Florida Corporation,

Plaintiffs-Appellants,

versus

BROWARD COUNTY SHERIFF'S OFFICE,

Defendant-Appellee.

------------------------------------------------------------------

Appeals from the United States District Court
for the Southern District of Florida

------------------------------------------------------------------

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered:     January 25, 2002
For the Court:     Thomas K. Kahn, Clerk
By:     McCombs, Elaine



ISSUED AS MANDATE
MAR 1 4 2002
U.S. COURT OF APPEALS
ATLANTA, GA.

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 25, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-10879

_____

D.C. Docket No. 99-07630-CV-DMM

QUIK CASH PAWN & JEWELRY, INC., a Florida corporation,
SKG CORP., a Florida corporation, d.b.a. We Buy Pawnbrokers,

Plaintiffs-Appellants,

versus

SHERIFF OF BROWARD COUNTY, Ken Jenne,

Defendant-Appellee.

_____

No. 01-10880

_____

D.C. Docket No. 00-06012-CV-DMM

SKG CORP., a Florida Corporation, d.b.a. We Buy Pawnbrokers,
QUIK CASH PAWN & JEWELRY, INC., a Florida Corporation,

Plaintiffs-Appellants,

versus

BROWARD COUNTY SHERIFF'S OFFICE,

                                        Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(January 25, 2002)**

Before CARNES, BARKETT and KRAVITCH, Circuit Judges.

BARKETT, Circuit Judge:

Quik Cash Pawn and Jewelry, Inc. ("Quik Cash") and SKG Corp., d/b/a

We Buy Pawnbrokers ("We Buy") (collectively, the "Pawnbrokers"), appeal the

district court's summary judgment in favor of Ken Jenne, the Sheriff of

Broward County (the "Sheriff"), on the Pawnbrokers' complaint against the

Sheriff under 42 U.S.C. §1983, alleging that the Sheriff seized their property

without due process of law, in violation of the Fourteenth Amendment, and

conducted an unlawful search of their shops, in violation of the Fourth

Amendment.  In granting summary judgment, the district court held that the

Sheriff's search of the shops was authorized by the Florida Pawnbroking Act,

539.001, Florida Statutes (the "Pawnbroking Act").  The court also found that

the Sheriff seized the Pawnbrokers' property as evidence of a crime and, noting

2

that seizures of property for the purpose of preserving evidence do not trigger the protections of the Fourteenth Amendment, concluded that the Pawnbrokers could not sustain a claim under § 1983.

## BACKGROUND

The Pawnbrokers operate pawnshops in Fort Lauderdale and Lauderdale Lakes, Florida. Both are duly licensed by the relevant state authorities. On November 30, 1999, during regular business hours, Detectives Ed Sileo and Joel Steinberg entered We Buy to conduct an inspection of the shop pursuant to the Pawnbroking Act. Sileo and Steinberg did not have a search warrant. During the inspection, Sileo and Steinberg demanded documentation describing the origin of all items in the store that were not openly "tagged" with markers corresponding to such documentation. When the manager was unable to provide forms for certain items, Sileo and Steinberg seized the items, including items that the manager claimed were his personal property, stating that the items would be returned upon the presentation of proper documentation. The seized items are still being held by the Sheriff.

On December 2, 1999, Detectives Sileo and Steinberg, along with a colleague, conducted a similar warrantless inspection of the Quik Cash shop,

3

and likewise seized all property for which no transaction forms could be immediately produced. The items remain in the custody of the Sheriff.

In seizing the Pawnbrokers' property, the Sheriff maintained that the Pawnbroking Act required the Pawnbrokers to create and maintain a transaction form for each of the items in their shop, and to produce such forms immediately at the request of investigating officers. Because the Pawnbrokers were unable to produce transaction forms for some of the items in their shops, the Sheriff concluded that there was probable cause to believe that they had committed a misdemeanor by violating the record-keeping requirements of the Pawnbroking Act. In the Sheriff's view, the "undocumented" property was evidence of the Pawnbrokers' crime, and was therefore subject to immediate seizure.[1]

The Pawnbrokers argued that the Pawnbroking Act did not require them to maintain and produce transaction forms for *all* of the items in their shop, but only for those items that had been acquired within the three years preceding the

_____

[1]During their depositions, both Detective Steinberg and Detective Sileo acknowledged their interpretation of the Pawnbroking Act to allow them to seize any item for which a pawnbroker is unable immediately to produce documentation. Detective Steinberg expressly agreed to the proposition that "when you go into a pawnshop and you ask a pawnshop owner to provide you with documentation for every piece of property in his pawnshop, and if he refuses to do so at that point and he just says I don't have them . . . you can just arrest him at that point and seize the property as evidence." Detective Sileo similarly acknowledged that "when you do an inspection, if the transaction forms are not given to you immediately, you have a right to seize all the property that is–that relates to these pawnbroker transaction forms that were not produced . . . ."

4

search. Thus, they maintained that the Sheriff's seizure of property was not based on the violation of any law and was therefore impermissible.

We review the trial court's grant of summary judgment *de novo*, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party (*i.e.,* the Pawnbrokers). See Arrington v. Cobb County, 139 F.3d 865, 871 (11th Cir. 1998).

## DISCUSSION

The alleged crime that formed the basis of the Sheriff's seizure was violation of § 8(a) of the Pawnbroking Act. However, although we find adequate support for the Sheriff's search of the Pawnbrokers' shops in the Act, we cannot find any support for the Sheriff's view that the Act requires pawnbrokers to maintain and produce transaction forms for *all* of the items in their shops, or for his corresponding conclusion that "undocumented" items may be immediately seized as evidence of a crime. The Pawnbroking Act provides, in relevant part:

> **(8) Pawnbroker transaction form.–**
>
> (a) At the time the pawnbroker enters into any pawn or purchase transaction, the pawnbroker shall complete a pawnbroker transaction form for such transaction, including an indication of whether the transaction is a pawn or a purchase, and the pledgor or seller shall sign such completed form . . . .

5

\*\*\*

**(9) Recordkeeping;  reporting;  hold period.--**

(a) A pawnbroker must maintain a copy of each completed
pawnbroker transaction form on the pawnshop premises for
at least 1 year after the date of the transaction.  On or before
the end of each business day, the pawnbroker must deliver to
the appropriate law enforcement official the original
pawnbroker transaction forms for each of the transactions
occurring during the previous business day, unless other
arrangements have been agreed upon between the
pawnbroker and the appropriate law enforcement official
. . . . If a criminal investigation occurs, the pawnbroker
shall, upon request, provide a clear and legible copy of the
image to the appropriate law enforcement official.

(b) If the appropriate law enforcement agency supplies the
appropriate software and the pawnbroker presently has the
computer ability, pawn transactions shall be electronically
transferred.  If a pawnbroker does not presently have the
computer ability, the appropriate law enforcement agency
may provide the pawnbroker with a computer and all
necessary equipment for the purpose of electronically
transferring pawn transactions.  The appropriate law
enforcement agency shall retain ownership of the computer,
unless otherwise agreed upon.  The pawnbroker shall
maintain the computer in good working order, ordinary wear
and tear excepted.  In the event the pawnbroker transfers
pawn transactions electronically, the pawnbroker is not
required to also deliver to the appropriate law enforcement
official the original or copies of the pawnbroker transaction
forms.  The appropriate law enforcement official may, for
the purposes of a criminal investigation, request that the
pawnbroker produce an original of a transaction form that
has been electronically transferred.  *The pawnbroker shall
deliver this form to the appropriate law enforcement official
within 24 hours of the request.*

6

(c) All goods delivered to a pawnbroker in a pawn or purchase transaction must be securely stored and maintained in an unaltered condition within the jurisdiction of the appropriate law enforcement official for a period of 30 calendar days after the transaction. Those goods delivered to a pawnbroker in a purchase transaction may not be sold or otherwise disposed of before the expiration of such period. The pawnbroker shall make all pledged and purchased goods and all records relating to such goods available for inspection by the appropriate law enforcement official during normal business hours throughout such period. The pawnbroker must store and maintain pledged goods for the period prescribed in subsection (10) unless the pledged goods are redeemed earlier . . . .

**(12) Prohibited acts.**--A pawnbroker, or an employee or agent of a pawnbroker, may not:

(a) Falsify or intentionally fail to make an entry of any material matter in a pawnbroker transaction form.

(b) Refuse to allow the agency, the appropriate law enforcement official, or the state attorney, or any of their designated representatives having jurisdiction, to inspect completed pawnbroker transaction forms or pledged or purchased goods during the ordinary hours of the pawnbroker's business or other time acceptable to both parties.

(c) *Obliterate, discard, or destroy a completed pawnbroker transaction form sooner than 3 years after the date of the transaction.*

**\*\*\***

**(16) Hold orders; issuance; required information; procedures.--**

(a) When an appropriate law enforcement official has probable cause to believe that property in the possession of a

7

pawnbroker is misappropriated, the official may place a written hold order on the property. The written hold order shall impose a holding period not to exceed 90 days unless extended by court order. The appropriate law enforcement official may rescind, in writing, any hold order. An appropriate law enforcement official may place only one hold order on property.

**(17) Criminal penalties.--**

\*\*\*

(b) In addition to any other penalty, any person, who willfully violates this section or who willfully makes a false entry in any record specifically required by this section commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083. Clerical or recordkeeping errors, such as typographical errors or scrivener's errors, regarding any document or record required by this section do not constitute a willful violation of this section, and are not subject to criminal penalties. Clerical or recordkeeping errors are subject to the administrative remedies, as provided in this act.

539.001, Florida Statutes (emphases supplied).

The provisions of this statutory scheme, both with respect to pawnbrokers and law enforcement authorities, can be succinctly summarized as follows:

1.    A pawnbroker must make a "transaction form" for every item pawned to, or purchased by, his shop (§ 8(a)).

2.    The pawnbroker must keep every newly-created pawnbroker transaction form at the shop for at least 1 year (§ 9(a)).

3.    Every business day, the pawnbroker must send the previous day's forms to the Sheriff (§ 9(a)).

8

4.  If possible, the pawnbroker must transmit his forms to the Sheriff electronically (§ 9(b)).

5.  The Sheriff can conduct criminal investigations to ensure compliance with these provisions (§ 9(a) & (b)).

6.  The Sheriff can, for purposes of a criminal investigation, ask a pawnbroker for the paper original of a transaction form that has been transferred electronically (§ 9(b)).

7.  In such a case, the pawnbroker has 24 hours to deliver the original to the Sheriff (§ 9(b)).

8.  A pawnbroker must store every item purchased by the store for 30 days, without selling it, and every item acquired by pawn for 60 days. (§§ 9(c), 10).  A pawnbroker must make such newly-acquired goods, and their corresponding transaction forms, available for inspection by law enforcement during these periods (§ 9(c)).

9.  A pawnbroker cannot refuse to allow appropriate law enforcement officials to inspect transaction forms (or pledged or purchased goods themselves) during ordinary business hours (§ 12(b)).

10. A pawnbroker cannot discard a transaction form for 3 years after the date of the transaction (§ 12(c)).

11. In cases where a law enforcement official believes that a particular item was stolen (and then pawned or sold to the pawnshop), the official may place a "hold order" on the item, pending judicial determination of rightful ownership (§ 16).

12. A pawnbroker who willfully violates any of the above requirements (or any of the other requirements of the Act) commits a misdemeanor of the first degree (§ 17(b)).

13. However, ordinary Clerical or record-keeping errors, such as typographical errors or scrivener's errors, do not constitute willful violations, and are not criminal acts (§ 17(b)).

With these provisions in mind, we first address the Pawnbrokers' Fourth

Amendment unreasonable search claim, and then turn to their Fourteenth

Amendment claim of seizure without due process of law.

Unreasonable Search

The Pawnbrokers argue that the Sheriff's search of their shops exceeded

his authority under the Act, and therefore violated the Fourth Amendment.[2]  We

disagree.  The Pawnbroking Act refers repeatedly to the extensive participation

of the Sheriff in administering its various prescriptions, as well as to the

Sheriff's overarching enforcement authority.  The Sheriff's integral role in the

statutory scheme persuades us that the Act empowers him or her to conduct

administrative searches of pawnshops to ensure compliance.

Specifically, in connection with the recordkeeping requirements of §§ 8

and 9, the Act provides that pawnbrokers must deliver all of their new

transaction forms to the Sheriff, and that "if a criminal investigation occurs, the

pawnbroker shall, upon request, provide a clear and legible copy of the image to

the appropriate law enforcement official."[3]  § 9(a).  The Act also provides that

---

[2]The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

[3]Section 2(b) of the Pawnbroking Act defines "Appropriate law enforcement official" as "the sheriff of the county in which a pawnshop is located or, in case of a pawnshop located within a municipality, the police chief of the municipality in which the pawnshop is located;  however,

"[t]he appropriate law enforcement official may, for the purposes of a criminal investigation, request that the pawnbroker produce an original of a transaction form that has been electronically transferred. The pawnbroker shall deliver this form to the appropriate law enforcement official within 24 hours of the request." § 9(b). These references, without limitation, to criminal investigations by the Sheriff demonstrate the Florida legislature's intent to give the Sheriff authority to undertake inspections of pawnshops in order to ensure compliance with the Pawnbroking Act's prescriptions.

The Pawnbrokers argue that § 9(c) limits the Sheriff's investigative authority to items acquired by the pawnshops during the 30 days preceding an inspection (or 60 days in the case of a pawned item). But this interpretation is inconsistent with the Act's express empowerment of the Sheriff to enforce the recordkeeping prescriptions of §§ 8 and 9, which pertain to all items acquired by the pawnshop for three years after their acquisition. Put differently, the fact that § 9(c) expressly authorizes the Sheriff to inspect pawnshops for compliance with the 30-day rule does not mean that the Sheriff is deprived of authority to inspect pawnshops for compliance with the Pawnbroking Act's other provisions. To the contrary, the references throughout §§ 8 and 9 to the

---

any sheriff or police chief may designate as the appropriate law enforcement official for the county or municipality, as applicable, any law enforcement officer working within the county or municipality headed by that sheriff or police chief. Nothing in this subsection limits the power and responsibilities of the sheriff."

possible occurrence of a criminal investigation conducted by the Sheriff

indicate that the Sheriff is affirmatively required to conduct such inspections.

Thus, we conclude that the Sheriff's search was reasonable under the

Pawnbroking Act.[4]

## The Seizure of the Pawnbrokers' Property

The Due Process Clause of the Fourteenth Amendment requires that a

private citizen be given notice and an opportunity to be heard before a

government official seizes his or her property. See generally, Fuentes v.

Shevin, 407 U.S. 67, 80-82 (1971). Nevertheless, "We tolerate some

exceptions to the general rule requiring predeprivation notice and hearing, but

only in 'extraordinary situations where some valid governmental interest is at

stake that justifies postponing the hearing until after the [seizure].'" United

States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993) (quoting

Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); Calero-Toledo v. Pearson

Yacht Leasing Co., 416 U.S. 663, 678 (1974) (In certain "limited circumstances

immediate seizure of a property interest, without an opportunity for prior

hearing, is constitutionally permissible."). The Supreme Court has suggested

---

[4]The Pawnbrokers argue only that the Sheriff's searches in this case were unlawful because they were not authorized by the Pawnbroking Act. They expressly decline to argue that the Act (as properly followed) fails to satisfy the test set forth in New York v. Burger, 482 U.S. 601 (1987) for the constitutional validity of statutory regimes that provide for warrantless administrative searches by law enforcement authorities. Appellants' Br. at 29 ("Appellants do not contest the fact that law enforcement authorities may conduct searches of pawnshops pursuant to Section 539.001 nor do they contest the constitutionality of this statute.").

that such a "limited circumstance" exists when law enforcement officials seize property as evidence of a crime. See James Daniel Good, 510 U.S. at 52. The Sheriff argues that his seizure of the Pawnbrokers' property falls within this exception to the Fourteenth Amendment's requirements because by failing immediately to produce transaction forms for *all* of the items in their stores, the Pawnbrokers violated § 8(a) of the Pawnbroking Act. The untagged property, the Sheriff asserts, constituted evidence of that crime, rendering it subject to seizure.

However, because we do not find sufficient probable cause to believe that the Pawnbrokers committed a crime in this case, the Sheriff's seizure of their property was not authorized and does not fall within any exception to the Fourteenth Amendment's requirement of pre-deprivation notice and a hearing.

To begin with, there is nothing in the Act that requires a Pawnbroker to attach "tags" to the items in his shop, or, for that matter, any other marker immediately apparent to law enforcement officers that corresponds to a transaction form required by § 8(a). Section 8(a) states only that "[a]t the time the pawnbroker enters into any pawn or purchase transaction, the pawnbroker shall complete a pawnbroker transaction form for such transaction." Section 12(c) provides that a pawnbroker may not "[o]bliterate, discard, or destroy a completed pawnbroker transaction form sooner than 3 years after the date of the

13

transaction." The logical inference is that a pawnbroker *may* discard a transaction form after three years. Thus, § 8(a) cannot apply to items later than three years from the date of their acquisition by the pawnshop. It is simply not unlawful under the Pawnbroking Act for a pawnbroker to store an item in his shop, later than three years from the date of the transaction, *without* a form.

Given the fact that § 8(a) does not apply to items after three years from the date of the transaction, and given the fact (which the Sheriff concedes) that he did not know whether the items in question in this case had been acquired by the Pawnbrokers within the preceding three years, there is no way that the Pawnbrokers' failure to produce transaction forms for the items could give rise to probable cause that they had violated § 8(a). The Sheriff simply had no way of knowing whether the items he seized were subject to the Act's recordkeeping provisions at all. In turn, the Sheriff had no reason to believe that the items constituted evidence of a crime such that they could be seized.

Moreover, the Pawnbroking Act provides, with regard to *all* items, regardless of when they were acquired, that a pawnbroker has 24 hours to produce the paper original of any transaction form that has been transmitted to the Sheriff electronically. See § 9(b). Because both Pawnbrokers here participated in the electronic transfer program, it would appear that this allowance applied to them. Section 9(b) provides:

14

> In the event the pawnbroker transfers pawn transactions electronically, the pawnbroker is not required to also deliver to the appropriate law enforcement official the original or copies of the pawnbroker transaction forms. The appropriate law enforcement official may, for the purposes of a criminal investigation, request that the pawnbroker produce an original of a transaction form that has been electronically transferred. *The pawnbroker shall deliver this form to the appropriate law enforcement official within 24 hours of the request.*

(emphasis supplied). Because they were participants in the electronic transfer program, the fact that the Pawnbrokers could not immediately produce transaction forms for Detectives Sileo and Steinberg could not have given rise to probable cause to believe that they had violated § 8(a), even if it were stipulated that the items in question *had* been acquired within the preceding three years and hence bound by the recordkeeping requirements of the Act. There is simply nothing unlawful in the Pawnbrokers' inability to provide forms to Sileo and Steinberg immediately when the Act expressly allows them 24 hours to produce forms upon request by authorities.[5]

---

[5]Nor can the fact that the Pawnbroking Act requires pawnbrokers to keep transaction forms on the premises of their shops for one year after their creation change this conclusion. See § 9(a) ("A pawnbroker must maintain a copy of each completed pawnbroker transaction form on the pawnshop premises for at least 1 year after the date of the transaction."). It is true, presumably, that if, in compliance with the Act, a pawnbroker has a particular transaction form on premises, he should be able to produce it for the Sheriff immediately upon request. But the fact is that the statute explicitly gives participants in the electronic transfer program 24 hours to produce the original of *any* transaction form transmitted to the Sheriff electronically. Under this regime, the fact that the Pawnbrokers were unable to produce transaction forms for some of the items in question could not have given the Sheriff probable cause to believe that the Pawnbrokers violated either § 8(a) or § 9(a) of the Act, since their failure to produce the forms immediately upon request was simply not unlawful. Thus, even if the items in question were less than three years old–indeed, even if they were less than one year old–the Sheriff lacked probable cause, based solely on the Pawnbrokers inability to *immediately* produce transaction forms, to believe

The Sheriff argues that § 12(b) provides that a pawnbroker cannot refuse to allow appropriate law enforcement officials to inspect transaction forms (or pledged or purchased goods themselves) during ordinary business hours. The Sheriff reads this categorical provision as requiring pawnbrokers to make available to inspecting officers transaction forms for all items in the shop, and to do so immediately. But this reading is incorrect on both points. Section § 12(b) says nothing whatever about *which* items in a pawnshop are covered by the recordkeeping provision of § 8(a), nor about the *timing* of producing the transaction forms; it merely states that a pawnbroker may not absolutely refuse to produce a form upon request by the appropriate authority. We decline to read § 12(b) as inconsistent with § 8(a) or § 9(b) and instead, hold that the three provisions apply simultaneously, as they are written: A pawnbroker may not refuse to produce transaction forms to appropriate law enforcement authorities for three years after the date on which he acquired an item. Further, where, as here, a pawnbroker transmits transaction forms to the Sheriff electronically, the pawnbroker has twenty-four hours to produce the paper original of any form, upon request by the Sheriff.

For the foregoing reasons, we reject the Sheriff's argument that his seizure of the Pawnbrokers' goods did not rise to the level of a constitutional violation. The Sheriff's seizures of the Pawnbrokers' property, entirely

---

that the Pawnbrokers had violated any provision of the Pawnbroking Act.

unauthorized by the Florida Pawnbroking Act, violated the Pawnbrokers due process right to pre-deprivation notice and a hearing. See <u>Fuentes</u>, 407 U.S. at 82. Because there was no legal basis for the taking of the Pawnbrokers' property, the district court erred in granting summary judgment to the Sheriff under the facts of this case.

The Sheriff argues vigorously that this result will functionally deprive him of *any* authority to enforce the Act's prescriptions. This, he contends, is because on any occasion on which he asks a pawnbroker for documentation regarding a particular item, the pawnbroker could simply state that the item was acquired more than three years ago, and the Sheriff would be required to take him at his word. We note that the Act is indeed silent on what would occur in such a situation. However, the problem the Sheriff cites is one that inheres in the Act itself, and thus, is one that must be addressed by the Florida Legislature should it wish to do so.

## CONCLUSION

For the foregoing reasons the trial court's summary judgment in favor of the Sheriff is **AFFIRMED** on the Pawnbrokers' Fourth Amendment illegal search claim but **REVERSED** on the Pawnbrokers' claim that the Sheriff's seizure of their property violated the Fourteenth Amendment.

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By:
Deputy Clerk
Atlanta, Georgia

17